UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

David Despot,                          :   Case No.1:10-cv-932
                                       :
      Plaintiff,                       :
                                       :
vs.                                    :
                                       :
American Income Life Insurance         :
Company and Torchmark                  :
Corporation,                           :
                                       :
      Defendants.                      :

**ORDER**

Before the Court is the joint motion of Defendants American Income Life Insurance Company and Torchmark Corporation for summary judgment. (Doc. 26) Plaintiff has filed his opposition (Doc. 34), and Defendants have replied.  (Doc. 35)  For the following reasons, Defendants' motion will be granted.

**FACTUAL BACKGROUND**

Plaintiff David Despot, proceeding pro se, alleges a panoply of claims for discrimination and retaliation under federal and state law, arising from the termination of his employment with American Income Life Insurance Company ("AIL").  (Torchmark Corporation is AIL's parent company, and they will be referred to collectively as AIL.)

Despot was employed by AIL as a Regional Director of Sales from August 2007 through October 30, 2009.  (Doc. 26, Ex. 2, Affidavit of Debra K. Gamble at ¶2; Doc. 28, Despot Depo. at 24.)

-1-

As a regional director, Despot was in charge of overseeing recruitment, sales and leadership development for various state insurance agencies that were  owned and operated by independent insurance agents who entered into contracts with AIL to sell insurance.  Despot would typically work from an agency office during the first part of the week, and then work from home on Friday.  He attended monthly company director meetings held in Texas which began on Monday morning.

Through the course of his employment, Despot reported from time to time about what he alleged to be AIL's failure to accommodate his religious belief that he should not be required to travel for work on Sundays.  (Despot Depo. at 19, 76, 78-84) Despot admitted that he never refused to travel on Sundays when he needed to do so, and was never disciplined for refusing to travel on a Sunday.  Id. at 74, 97.  He also complained to company management about certain practices and policies that he considered to be sexually discriminatory to women.  Id. at 213-219; 226, 228-34.  On one occasion, he said he was required to attend a strip club with other male employees during an out of town business trip, and that female employees were not allowed to attend.  He complained that a company policy of not permitting

"ride-alongs"[1] between male Regional Directors and female sales agents was discriminatory because it deprived female agents of training opportunities. Id. at 226, 228-34.

On October 27, 2009, Despot met with Brian Mitchell and Debra Gamble, the general counsel and senior vice president, respectively, for AIL. Among other issues they discussed, Despot told them about an incident involving an unnamed sales employee who made a sexually inappropriate comment to his wife. The next day, October 28, Despot sent an email to Gamble and other AIL management that included a description of the incident purportedly written to Despot by his wife, Tanya. She told Despot that Richard Meshulam, another AIL sales director, made an inappropriate sexual comment to her at a AIL sales convention in California in May 2009. Despot Depo. at 253-254; Gamble Aff. at ¶10.

AIL terminated Despot's employment on October 30. Gamble sent Despot an email informing him of this decision, stating that AIL had investigated his allegations of retaliation and found them to be unsupported. While Despot clearly disagreed with some company policies (such as the ride-along policy), Gamble told him that none of those policies violated any law. Gamble also

---

[1] A "ride-along" is the practice of a regional director accompanying newer sales agents on sales calls "in order to evaluate the overall performance of an Agency and the effectiveness of that Agency's training of its agents." See Doc. 26, Ex. 1, Affidavit of Robert Falvo at ¶ 4.

-3-

informed Despot that he violated a clear duty to immediately report any and all incidents of harassment or misconduct, and to cooperate with any resulting investigation, as required by AIL's anti-harassment policy.  She noted that Despot had revealed the alleged incident involving his wife only the day before, despite knowing about the incident since May 2009.  Gamble informed Despot that his conduct was a serious breach of his obligations as a director, and that his employment was terminated effective immediately.  (Gamble Aff., Exhibit 3)

Despot filed a charge with the Ohio Civil Rights Commission on July 31, 2010, claiming religious discrimination and retaliation.  He was subsequently issued a right to sue notice, and he timely filed his complaint in this case.  He alleges that he was subjected to an offensive, intimidating, and hostile work environment; that his acceptance of this environment became a term and condition of his employment; and that this situation amounted to sexual discrimination.  Despot further alleges that AIL retaliated against him and harassed him for making complaints, threatened him, and made false statements about him to Ohio unemployment compensation personnel.  He also claims that when he complained about the incident involving his wife and certain of AIL's business practices, AIL retaliated against him by denying him promotions and terminating his employment.

AIL now seeks summary judgment on all of Despot's claims.

-4-

AIL argues that Despot cannot establish a prima facie case of a failure to accommodate his religious beliefs, of religious or sexual harassment, or of unlawful retaliation.  Even if he can satisfy his prima facie burden on any of these claims, AIL contends that he has not shown that its proffered reason for his termination was pretextual.

**ANALYSIS**

1.  <u>Summary Judgment Standards</u>.

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An assertion of a undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers. The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'"  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) (internal quotation omitted).

The Court is not duty bound to search the entire record in an effort to establish a lack of material facts.  <u>Guarino v. Brookfield Township Trs.</u>, 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for

-5-

summary judgment...," <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute.  <u>Anderson</u>, 477 U.S. at 250.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Electric Industries Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor.  <u>United States v. Diebold Inc.</u>, 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249.  The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Id</u>. at 250.  "If the evidence is merely colorable, ...  or is not significantly probative, ...  the court may grant judgment."  <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted).

2.   <u>Despot's Opposition Memorandum</u>

The Court must address two preliminary matters before reaching the merits of AIL's motion.  Despot filed an opposition entitled "Plaintiff's Initial/Partial Response" to ALI's motion.

-6-

(Doc. 34)  He asserted that AIL owed him responses to his document requests and interrogatories.  And he claimed that he had not received a copy of his own deposition transcript.  That deposition was filed on the docket on March 30, 2012 (Doc. 28), and has been available to Despot at least since then.  With respect to his assertions about overdue discovery responses, the Court notes that Despot filed a motion to compel on November 8, 2011, which was denied by the Magistrate Judge because he failed to comply with the rules governing such motions.  (See Doc. 25) He did not file objections to the Magistrate Judge's order, he never renewed his motion, and he failed to respond to AIL's request for attorney's fees as he was ordered to do by the Magistrate Judge.  The discovery deadline was November 11, 2011, and the Court concludes that Despot is not entitled to any further discovery responses from AIL.

In addition, there is nothing in the Federal Rules of Civil Procedure nor in this Court's Local Rules permitting piecemeal responses to dispositive motions.  The Court is cognizant of Despot's pro se status, but he has been afforded ample notice that his status may afford him some leniency, but does not excuse his duty to follow the procedural rules.  See, e.g., Doc. 25, March 9, 2012 Order denying Despot's motion to compel.  See also McNeil v. United States, 508 U.S. 106, 113 (1993), noting that pro se litigants may receive some leniency particularly where a

-7-

procedural error could be fatal, but emphasizing that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."  The Court also notes that Despot has filed a plethora of lawsuits in this district (and others) over the past decade, demonstrating that he is not a novice to the federal courts or to federal procedural rules. See, e.g., *Despot v. Nationwide Ins.*, No. 1:12-cv-44 (S.D. Ohio); *Despot v. Ohio National Financial Srvs., et al.*, No. 1:06-cv-193 (S.D. Ohio); *Despot v. Keystone Insurers Group, Inc., et al.*, No. 1:07-cv-1047 (S.D. Ohio); *Despot v. Western Southern Financial Group*, No. 1:06-cv-474 (S.D. Ohio).  Despite the title of his response to AIL's motion, the Court considers the record to be closed with respect to that motion.

The Court also concludes that Despot has failed to properly support his opposition to AIL's motion.  Fed. R. Civ. Proc. 56(c) states that a party opposing a motion for summary judgment must support his opposition by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Despite his pro se status, Despot is required to come forward

with some admissible evidence that raises a genuine factual dispute.  See McKinnie v. Roadway Express, Inc., 341 F.3d 554, 558 (6th Cir. 2003)(holding that pro se litigants "are not entitled to special treatment, including assistance in regards to responding to dispositive motions.").

On April 6, 2012, this Court specifically notified Despot of his obligation to respond to AIL's motion.  (See Doc. 32)  The Court's notice advised him that he could not simply rest upon his complaint, and that he must provide evidence showing there is a genuine factual dispute.  Despot has not done so.  He does not proffer any evidence supporting his claims.  He has not submitted an affidavit from anyone with knowledge of the events he alleges in his complaint.  Despot's response consists almost entirely of paragraphs taken from AIL's motion followed by his own conclusory arguments about why he believes AIL discriminated against him, and citing case law that generally addresses such claims.

On this basis alone, AIL's motion should be granted. Despot's status does not require the Court to attempt to make Despot's case for him.  See Ashiegbu v. Purviance, 74 F.Supp.2d 740, 746 (S.D. Ohio 1998).  Nor is the Court required to pore over the record to determine if any genuine factual disputes may exist.  Street v. J.C. Bradford, supra, 886 F.2d at 1479. Rather, the Court may rely on the facts presented by AIL, which has submitted evidence showing that Despot's claims lack merit;

-9-

Despot's own conclusory allegations and subjective beliefs to the contrary are insufficient to defeat AIL's motion.  See <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 584-85 (6th Cir. 1992).

However, because the substance of Despot's claims have been addressed in the memoranda, the Court will reach the merits of his claims.  While Despot's complaint identifies 19 separate causes of action, they all fall within the general categories of religious accommodation, various forms of discrimination, harassment, and retaliation.  Because Ohio courts apply federal law to claims arising under Ohio Rev. Code 4112, see <u>Peters v. Lincoln Elec. Co.</u>, 285 F.3d 456, 469 (6th Cir. 2002), the Court will consider Despot's federal and state law claims together under these four general categories.

3.  <u>Religious Accommodation</u>

Despot contends that AIL discriminated against him based on his Catholic faith by failing to accommodate his religious beliefs.  As best as the Court can discern, Despot claims that AIL required him to travel on Sundays, which is against his faith.  He claims he was verbally harassed and disciplined for seeking this religious accommodation.  AIL argues that Despot cannot establish a prima facie case of failure to accommodate, and in any event he has no evidence that AIL's legitimate reason for terminating him is a pretext for unlawful religious discrimination.

Title VII requires an employer to accommodate "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).  To establish a prima facie claim, Despot must show: (1) he holds a sincere religious belief that conflicts with his employer's requirement; (2) he informed his employer about his belief and the conflict; and (3) he was discharged or disciplined for failing to comply with the requirement.  Tepper v. Potter, 505 F.3d 508, 514 (6th Cir. 2007).  If Despot satisfies this prima facie burden, AIL must demonstrate that it could not reasonably accommodate him without incurring undue hardship.  Id.

AIL contends that Despot has not shown that he holds a sincere religious belief that conflicted with a requirement of his employment, or that he was disciplined as a result of failing to comply with any such requirement.  The record reflects that Despot sent an email on March 8, 2009 (which was a Sunday) to Robert Falvo, AIL's Senior Vice President of Field Operations and Despot's supervisor, complaining about his work hours, his salary, his bonus (which he felt was inadequate), and a lack of promotion.  He also told Falvo that his "faith lifestyle has been adversely affected since joining AIL with often required business

travel on Sundays - for an alarming total of 25 Sundays of business travel in 2008.  I believe that Sunday is faith day and I believe and feel that business travel should not take place on Sundays or, if it does at all, on very rare and necessary occasions only." (Despot Depo., Ex. D) Despite this complaint, however, Despot testified that he engaged in many other activities on Sunday, such as grocery shopping or doing household chores, and he admitted that he voluntarily sent work-related emails on Sundays.  He also does not dispute that he traveled on many Sundays throughout his tenure with AIL without complaint. AIL argues that his belief that "faith is priority" on Sunday was either not sincerely held, or that his belief did not actually conflict with his work-related Sunday travel.  AIL also contends that Despot fails to satisfy the third element of his prima facie case, showing that he was disciplined or discharged for refusing to travel on Sunday.  Despot admitted that he had never refused to do so, and that he could not have been disciplined for refusing to travel on a Sunday because he regularly did so. (Despot Depo. at 87, 97-98)

Whether or not Despot sincerely believes that Sundays should be reserved for faith-related pursuits, he admitted that he regularly engaged in non-faith activities on Sundays, both personal and work-related.  And it is undisputed that he has not demonstrated that he was disciplined in any way, much less

discharged, because of his refusal to comply with a work-related requirement. AIL is entitled to judgment on Despot's religious accommodation claims, because he has failed to establish a prima facie claim of a failure to accommodate.

4. <u>Religious and Age Discrimination Claims</u>

The Court will consider these claims together, as they are premised on the same facts. Despot has no direct evidence of any discrimination, and the familiar <u>McDonnell-Douglas</u> burden-shifting analysis applies to his discrimination claims. Despot must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) a person not within the protected class replaced him, or that AIL treated similarly-situated, non-protected persons more favorably. <u>Younis v. Pinnacle Airlines, Inc.</u>, 610 F.3d 359, 363 (6th Cir. 2010). Despot's prima facie burden is not onerous, but simply raises a rebuttable presumption of discrimination by eliminating the most common nondiscriminatory reasons for the employer's action. <u>Cline v. Catholic Diocese</u>, 206 F.3d 651, 660 (6th Cir. 2002) (internal citations and quotations omitted). If Despot can establish a prima facie case, AIL must proffer a legitimate nondiscriminatory reason for its actions. Despot must then demonstrate that AIL's proffered reason is a pretext for unlawful discrimination. Despot can establish pretext by showing (1) the employer's reason

-13-

has no factual basis; (2) the reason did not actually motivate the employer; or (3) the articulated reason is insufficient to justify the adverse action taken.  <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564, 576 (6th Cir. 2003).

AIL contends that Despot has not established a prima facie case of discrimination on any basis because he was not replaced by someone outside his protected class, and he has no evidence that similarly situated, non-protected employees were treated more favorably.  The Court agrees.  AIL has submitted unrebutted evidence that Despot was not replaced after he was terminated, and his agency offices were reassigned to other regional directors.  (Gamble Aff. at ¶15)  Despot does not dispute this evidence.  The Sixth Circuit has held that an employee is not "replaced" if the employee's job duties are assigned to other employees, or "redistributed among other existing employees already performing related work.  A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties."  <u>Barnes v. GenCorp Inc.</u>, 896 F.2d 1457, 1465 (6th Cir. 1990).  The only evidence before the Court establishes that AIL redistributed Despot's work to other existing regional directors.

Moreover, Despot has not identified any similarly-situated employee who was treated more favorably.  He was asked whether or not he was claiming that "there are similarly situated younger

-14-

employees that were treated more favorably than [Despot] ...,"
and Despot responded "I'm not saying that."  (Despot Depo. at
281)  He then stated that he was not "denying or favoring" that
question (Id. at 282).  But he has failed to produce any evidence
in response to AIL's summary judgment motion showing or
suggesting that any younger employee, or any employee not of the
Catholic faith, was treated more favorably than he.  Despot
therefore has not satisfied a required element of his prima facie
discrimination claims.

　　　Even if Despot had done so, however, AIL has proffered a
legitimate reason for his termination: his breach of his duty to
timely and properly report incidents of alleged harassment or
misconduct as required by AIL's written policy.  Despot has not
come forward with any evidence suggesting that this reason is a
pretext for age or religious discrimination.  He does not dispute
the facts, as he admits that he did not report the alleged
incident involving his wife for almost five months.  He has no
evidence suggesting that AIL was not actually motivated by his
breach of the company's anti-harassment policy, or that his
conduct was insufficient to justify AIL's decision to terminate
his employment.  The Court therefore concludes that Despot has
not shown that a genuine factual dispute exists on his age and
religious discrimination claims, and AIL is entitled to judgment
on those claims as a matter of law.

5.  <u>Harassment</u>

Despot's complaint includes two counts of "EEOC Sexual Harassment/Sex Discrimination" where he alleged that he was the victim of sexual harassment.  He also alleged that he was harassed based upon his religious beliefs.  He based these claims on the incident involving his wife described above.  He also relied on his email to Falvo and others on October 24, complaining that sales agents were transferred from one regional director's supervision to another's, because the director allegedly had an extramarital affair with an employee of an independent agency under that director's supervision.  Despot alleged that this situation constituted sexual harassment and created a hostile working environment.

A prima facie case of harassment that creates a hostile work environment requires Despot to show: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment based on his protected status; (3) the harassment unreasonably interfered with his work performance by creating a hostile, offensive, or intimidating work environment; and (4) AIL is liable for that harassment.  See, e.g., <u>Clark v. United Parcel Service, Inc.</u>, 400 F.3d 341, (6th Cir. 2005) (sexual harassment); <u>Hafford v. Seidner</u>, 183 F.3d 506, 512 (6th Cir. 1999)(racial or religious harassment).

Despot admitted that he was not personally subjected to

-16-

sexual harassment stemming from the incident between his wife and Meshulam, or on any other basis that this Court can discern. In his response to AIL's motion, he contends that it is sufficient to show that he was affected by allegedly harassing conduct even if he was not the intended victim. (Doc. 34 at 13) Regardless of this contention, Despot has no admissible evidence to show that he was subjected or exposed to any such conduct. The only evidence Despot offers about the Meshulam incident is his email that includes his wife's statement to him. This is classic hearsay, and may not be considered at the summary judgment stage. Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999). Despot has no admissible evidence such as affidavit from his wife or from Meshulam, the only two people with personal knowledge about this incident. The same is true with respect to his complaint about an extramarital affair between another regional manager and an agency employee. His only evidence of this is his statement that he "heard" (from sources and people unknown) that the affair happened, and had prompted the reassignment of that agency. Even if all of this is true, the Court cannot discern anything about this situation that reflects pervasive sexual or religious harassment directed at or affecting Despot.

AIL also notes Despot's deposition testimony stating that he faced religious harassment after he complained to Falvo about

-17-

traveling on Sunday.  Despot said that Falvo told Despot that he had lost Falvo's trust, and was not a "member of the team." (Despot Depo. at 93, 96, 296)  Even if Despot is accurate in reporting Falvo's response, this incident does not amount to harassment that created a hostile work environment based upon Despot's Catholic religion.  The alleged harassing conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Clark, 400 F.3d at 351 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  Isolated or sporadic incidents, even if they constitute harassment, are plainly insufficient.  Despot has failed to produce evidence that he was subjected to the type of pervasive harassing conduct that could give rise to a hostile environment claim.  AIL is therefore entitled to judgment on Despot's harassment claims.

6.  Retaliation

    Despot's complaint alleges that AIL retaliated against him for seeking religious accommodations, and for objecting to allegedly discriminatory company practices.  In his complaint, he recites several activities that apparently form the basis for his retaliation claims: (1) requesting an accommodation for his religious belief that he should not be required to travel on Sundays; (2) complaining to AIL that he was required to go to a strip club on one occasion against his will, and that female

-18-

employees were prevented from attending; (3) complaining about AIL's policy of not allowing female sales agents to participate in "ride-alongs;" (4) a vague reference to AIL "not taking seriously" various "EEOC discrimination matters" during the course of his employment (Doc. 1 at 8); (5) complaining about AIL's failure to promote him and his dissatisfaction with his salary and his bonus; and (6) complaining about the incident involving his wife.  (Doc. 1 at 7-14)  He alleges that AIL subjected him to discipline and harassment, denied him promotions, terminated his employment, and made false statements to the Ohio Office of Unemployment Compensation.  (Doc. 1 at 14-16)

In order to establish a prima facie case of retaliation, Despot must demonstrate that: (1) he engaged in conducted protected by the anti-discrimination statutes; (2) AIL knew that he engaged in that protected activity; (3) AIL subsequently took an adverse employment action against him; and (4) the adverse action was causally connected to his protected activity.  See Ladd v. Grand Trunk W. R.R., Inc., 552 F.3d 495, 502 (6th Cir. 2009).  If Despot satisfies this prima facie burden, AIL must proffer a legitimate, non-retaliatory reason for the adverse employment action, and Despot must then demonstrate pretext.

AIL argues that Despot has not established a prima facie retaliation claim because he has not shown that he engaged in

statutorily protected activity, and because there is no evidence of a causal connection between any such activity and his termination.  Two types of activity fall within the scope of "protected" activity: participation in an EEOC or other anti-discrimination proceedings, and conduct opposing an employer's Title VII violation.  See Wasek v. Arrow Energy Services, Inc., 682 F.3d 463, 469 (6th Cir. 2012).  Despot's allegations amount to a contention that he opposed various allegedly unlawful practices.

The Court has reviewed Despot's complaint and his response to AIL's motion, and must conclude that all of his complaints or opposition conduct, save for one, do not fall within the scope of Title VII-protected activity.  Complaints about his pay, or a single incident where he claims he was required to go to a strip club, or the single incident involving his wife (a non-employee) are not sufficient.  He has no evidence that any female agent ever complained that the ride-along policy discriminated against them or against women agents generally.  And as AIL notes, these agents were not employed by AIL, they were employees of the independent agencies who had contractual relationships with AIL. His complaint about travel on Sundays arguably falls within the zone of protected activity as a complaint about a discriminatory religious practice.  But as discussed above, he did not actually complain that he was discriminated against based on his faith,

-20-

nor identify any adverse action that was taken against him.

Even if any of Despot's complaints amount to protected activity, he has also failed to establish any causal connection between his complaints and his termination.  He apparently complained about Sunday travel early in his tenure, and again in his March 2009 email.  He then renewed his complaint on October 24, 2009, six days before he was terminated.  The Sixth Circuit has held that evidence of an adverse action taken shortly after protected activity may be sufficient in some circumstances to satisfy the casual link requirement.  See Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525-526 (6th Cir. 2008), where the court acknowledged some "confusion in the case law" on this question, but held that: "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.  But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality."  In Spengler v. Worthington Cylinders, 615 F.3d 481, 494 (6th Cir. 2010), the court found that any inference of causation based on the temporal proximity of protected activity and an adverse action was

extinguished because the plaintiff's decision to leave the
worksite was an intervening event between the activity and the
adverse action.  Here, AIL similarly argues that any inference of
causation based on the temporal proximity between Despot's last
complaint, six days before his termination, is extinguished by
Despot's admission that he violated AIL's anti-harassment policy
and did not promptly report an incident of harassment.

Despot did renew his objection to Sunday travel shortly
before he was terminated.  But he has no other evidence of any
retaliatory conduct taken against him, and there is no suggestion
that AIL retaliated against him after he initially voiced his
objections either early in his tenure or after his March 2009
email.  He does not offer any evidence tending to show that other
employees were treated differently than he was with respect to
complaints based on religion or other protected classifications.

But even if Despot's allegations satisfy his prima facie
burden, however, he has not raised a genuine dispute that AIL's
reason for his termination was a pretext for retaliation.  As
discussed above with his other claims, he has not come forward
with any evidence that raises a reasonable inference that AIL's
stated reason, Despot's breach of its anti-harassment policy, was
not the true reason for his termination.

## CONCLUSION

For all of the foregoing reasons, the Court grants AIL's

-22-

motion for summary judgment on all of Despot's claims.  Despot's complaint is dismissed with prejudice.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: July 30, 2012          s/Sandra S. Beckwith
                             Sandra S. Beckwith
                             Senior United States District Judge